**ARNOLD v. KINSEY et al.**

No. 3973.

Court of Civil Appeals of Texas. El Paso.

Jan. 2, 1941.

Rehearing Denied Jan. 23, 1941.

Mead & Metcalfe, of Marfa, for appellant.

W. Van Sickle and A. E. Owens, both of Alpine, for appellees.

WALTHALL, Justice.

Al Kinsey, as plaintiff, brought this suit against R. W. Arnold and Leonard Henderson, trustee, defendants, to enjoin recovery on two prominssory notes, bearing interest, for $1,500 each, the notes executed by Roy Sims and Al Kinsey, and payable to R. W. Arnold, secured by a deed of trust executed by Al Kinsey to Leonard Henderson as trustee on certain town lots in the town of Alpine, Texas, and fully described in the petition, to secure the payment of said two notes.

At the request of Arnold, Henderson, the trustee in the deed of trust, advertised the trust property for sale, whereupon Kinsey filed suit and alleged, in effect, that the notes were given without any consideration and were void, and prayed that the deed of trust be cancelled and the cloud cast on the trust property be removed, and that a temporary injunction be granted restraining the sale of the trust property. The injunction was granted and the sale abandoned.

Arnold thereupon filed an answer and cross-action alleging the execution of the two notes and the deed of trust.

Roy Sims filed answer on Arnold's cross-action and alleged and showed that he had received a discharge of all claims against him through bankruptcy proceedings.

Kinsey further answered Arnold's cross-action and alleged, in substance, that the two notes in question were accommodation notes; that Sims had become indebted to Arnold, that Arnold requested him, Kinsey, to sign the notes as an accommodation to him; that no consideration passed between them for his signature; that Arnold verbally promised him that he would not be

expected to pay the notes; that he, Arnold, wanted to borrow money on the notes and wanted an additional name for that purpose; that he executed the deed of trust with the same understanding as above.

Arnold replied to the above pleading of Kinsey and denied that he ever made such agreement; further alleged that subsequent to the giving of the notes and deed of trust, and before the maturity of the notes, at Kinsey's request he extended the due date of one of the notes, and pleaded such extension as sufficient consideration for Kinsey's signing the notes, and as relieving any infirmity, if any, in signing the notes.

The case was tried with a jury and submitted upon two special issues, one of which was whether Arnold requested Kinsey to sign the two notes sued upon, and the second issue was whether Kinsey signed the notes under an agreement with Arnold that he (Kinsey) was not to pay the notes. Both issues were answered by the jury favorably to Kinsey.

The court overruled Arnold's general and special exceptions to Kinsey's answer and cross-action, and entered judgment on the verdict that Arnold take nothing by his cross-action against Kinsey, and that Kinsey have judgment perpetually enjoining the collection of the notes and the foreclosure of the deed of trust, and removing the cloud from title.

Arnold filed and presented a motion for a new trial, and an amended motion for a new trial, and in the latter set up misconduct of the jury as to matters alleged as occurring in the jury room. The court heard the evidence as to the misconduct, and overruled the motions. The court directed that a full statement of the evidence on the matter of misconduct of the jury be sent up with the record.

Arnold duly perfected this appeal and filed assignments of error, and presents thereunder three propositions.

Appellee Kinsey has filed no brief in this case.

Appellant's three propositions refer to the matter which is alleged to have occurred in the jury room, and complained of by appellant in his motion for a new trial, are closely connected, raise the question of misconduct of the jury, and, if misconduct, does it show reversible error. The court overruled appellant's motion for a new trial on the ground of the misconduct complained of.

Appellant discusses the three propositions together, and we shall do the same.

The material evidence is substantially as follows:

Kinsey testified: Arnold presented the notes to Kinsey and explained that he would like to get another name on the notes that it would make it look better; thought he might want to borrow a little money on them, and it would help him that much if Kinsey would sign them. Witness did not owe Arnold anything. At that time the notes had been signed by Roy Sims. Kinsey signed both notes on that occasion. Arnold said to Kinsey in conversation that "he didn't expect to call on me (Kinsey) for any payment of them, or any part of them—that it was only an accommodation to him."

Later Arnold asked Kinsey if "he would put up some kind of security on those notes," said "he had been unable to borrow any money on them but with a little additional security he would be." Said Arnold asked witness again, saying that "a deed of trust on the property (witness had referred to in his first conversation as his homestead) would be all right in law." Question: "Did he at that time say anything further about not expecting you to have to pay the notes?" Answer: "Only as an accommodation to help him out of a tight, that he was short on cash." Witness said, "with that understanding with Arnold he executed the deed of trust" on the property involved.

Kinsey at length detailed a conversation with Arnold with reference to a car of wine which Arnold said Kinsey was to have; that while in no danger, the wine would reimburse him for anything he had to pay, should he ever have to pay the notes. We think it not necessary to state the conversation and we omit stating it. Witness never got the wine, said it was "carted out" and sold elsewhere.

Kinsey testified on cross-examination: Arnold brought the notes to him and said he wanted him to sign them to make it look better, and as an accommodation to Arnold, and said "I wouldn't ever have to pay it." Did not know that Roy Sims had been borrowing money from Arnold, or that he was going to give Arnold notes for borrowed money. Did know the deed of trust was being extended; did not know the note was being extended; read in part the instrument he signed (deed of trust); did not read it because it was an accommo-

dation paper. (Witness testified on cross-examination at length along the same line as on direct examination, which we omit, except where apparently there is an addition thereto.)

Witness was not a partner to Sims—was just a clerk, was not getting any of the profits. (Much has been said about the wine, which we omit.)

Witness said he got no profit out of anything.

R. W. Arnold testified at length about the Sims' notes and the conversation with Sims as to who was to sign them; that Sims said he could get Al Kinsey to sign the notes and he (Arnold) said all right. Witness said he "did not know when Kinsey signed the notes, * * * it (one of the notes) was signed when I got the notes. I don't know who gave them to me." Question: "State whether or not when the notes came back to you (from Sims) Mr. Kinsey's name was on the notes." Answer: "Yes, sir." Witness denied that when Kinsey signed that note he told him "he was not going to have to pay it; did not say anything about that, or that I wanted him to sign it without him being responsible to make it look better; I just asked him to sign this and fix it up in a business like way."

Arnold testified at length in contradiction to the statements of Kinsey as to his contemplating borrowing money on the notes, or to Arnold giving Kinsey security on a car of wine to indemnify him for signing the note. Witness said he had no interest in the wine or right to place it to Kinsey.

Arnold testified that one of the notes was extended; Judge Milam wrote it on the back and witness signed it. Kinsey knew of the extension and the reason for doing so.

We have read the evidence of both Kinsey and Arnold. Their evidence is in direct contradiction to each other in every material respect and we see no useful reason for further quoting therefrom.

The court heard the evidence, made no findings of fact, but expressed his opinion that both the law and facts, as well as the verdict, are with Al Kinsey, and so entered judgment.

Now on the question of the misconduct of the jury. Sam Nelson was one of the jurors who tried the case. He testified that on issue No. 2 submitted by the court the result of the first ballot was eleven in favor of answering "Yes" to one "No," Nelson being the one opposed. There was a discussion in the jury room as to the evidence on the issue; later No. 2 was unanimously answered "Yes." The question was asked the witness: "Whether or not this statement, or the substance of it, was made by any one of the jurors in the discussion as to their verdict after that first ballot was taken: 'that Mr. Arnold was a shrewd business man, much smarter than Al Kinsey.' Do you remember if that statement was made?" The witness said "That he was a shrewd business man and smarter. I don't think that sentiment was brought out. It was probably mentioned that he had been more successful in a business way." Question: "Was it stated that he was a shrewder business man than Mr. Kinsey?" Answer: "Well, I don't know."

Several similar questions were asked the witness, but the record does not show that the witness made any definite statement to the questions.

Again, the question was asked the witness: "Was anything there said about Mr. Kinsey being a poor man and having put up his home?" Answer: "Yes, sir." Question: "That was said by these jurors?" Answer: "Yes, sir." Question: "Was anything said in the jury room about recalling Mr. Arnold and getting his testimony?" Answer: "Yes, sir, I did."

Much is said in that connection which we omit. Witness was contending that Arnold had denied that he had asked Kinsey to sign the notes, and the other jurors were contending that Arnold made no denial. The contention also involved the question whether Arnold had promised Kinsey that he would not make him pay the notes.

The juror said that he did not directly request the foreman to have the evidence reproduced, but that "he asked about it." The juror said, "they said," the jurors giving reasons for not recalling the evidence, it was Saturday night, etc.

We have considered the several matters assigned as misconduct of the jury, and have concluded that each of them is too indefinite and too uncertain to constitute misconduct. To say that something was probably said about a matter is too indefinite. We have found no reversible error.

The case is affirmed.

556

SUTTON, J., not participating.

### On Rehearing.

WALTHALL, Justice.

In the opinion, in considering the question of misconduct of the jury, we thought, and so stated, that the evidence was too indefinite to show misconduct.

The jury stood eleven to one on an issue then being considered and the testimony given by one of the parties. The one juror wanting to have the evidence reproduced or reread made no request to the court to have the desired evidence reread to the jury, but simply made a request to the jury in the jury room that the evidence of the witness be reread to the jury.

The evidence of the juryman on question and answer on what occurred is as follows, the juror having said he wanted the evidence reproduced:

"Q. You made that request to the foreman? A. Yes, sir. Not directly to him, I guess, but I asked about—

"Q. What was said? A. They said it would be necessary for it to be transcribed and it likely would be pretty late that night before it could be done and get that information before the jury. They said it would take until about 12 o'clock. As I remember it, this was on Saturday and they said it would take until about 12 o'clock that night to get it transcribed.

"Q. Was anything said about the court wouldn't hold that long? A. I was told that I would probably receive a reprimand from the court for not having paid more strict attention to the evidence as it was presented if I requested that the evidence be sent in."

The juror testified that he did not know that the jurors had a right, on a request to the court, to have the stenographer's notes reread to him, and that had he known, he thinks he would have insisted on having it done.

After the above discussion the juror agreed with the others on the verdict.

Appellant complains that the jury alluded to, or stated as a fact, Kinsey was a poor man and had put up his home, and that Arnold was a more successful business man than Kinsey; that there was no evidence to support the statement, and that the reference to the matter stated constituted misconduct and reversible error.

On the trial Kinsey testified Arnold asked him if he would "put up some kind of security on those notes"; that with a little additional security he would be enabled to borrow money on them. Kinsey said: "I told him that I didn't have anything to put up except a home."

On the hearing on the motion for a new trial on account of misconduct of the jury, juror Sam Nelson testified for appellant as to what occurred in the jury room:

"Q. Whether or not this statement, or the substance of it, was made by any of the jurors in the discussion as to their verdict, after the first ballot was made, to this effect: 'That Mr. Arnold was a shrewd business man, much smarter than Al Kinsey.' Do you remember that statement was made. A. That he was a shrewd business man and smarter? I don't think that statement was brought out. It was probably mentioned in a way.

"Q. Was it stated that he was a shrewder business man than Mr. Kinsey? A. Well, I don't know."

Some other question similar to the above but about the same in substance was asked the juror, to which the juror replied: "Well, I don't remember that that discussion took place."

Appellant submits that in the jury room some of the jurors, in order to induce the juror Sam Nelson to agree to a verdict, stated that "Al Kinsey was a poor man and was putting up his home," and that when that statement was made Nelson agreed to join the other eleven jurors in the verdict.

The evidence of Sam Nelson on the question of misconduct shows the following:

"Q. Was anything there said (jury room) about Mr. Kinsey being a poor man and having put up his home? A. Yes, sir."

Kinsey had put up his home and in doing so had said that his home was all he had. The evidence does not show that he had any other property.

The court found against appellant on the issue of misconduct of the jury.

We think no reversible error is shown, and the motion is overruled.

SUTTON, J., did not participate.